**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Matthew C. BOYKIN, Defendant–Appellant.**

No. 01–3525.

United States Court of Appeals, Sixth Circuit.

Nov. 6, 2002.

Before KENNEDY, NORRIS, and BATCHELDER, Circuit Judges.

OPINION

NORRIS, Circuit Judge.

Defendant Matthew Boykin appeals from the sentence imposed after he pleaded guilty to two counts related to passing and possessing counterfeit checks in violation of 18 U.S.C. §§ 371 & 513(a). He contends that the government breached the terms of his plea agreement when it declined to move for a downward departure pursuant to U.S.S.G. § 5K1.1. We find no error and affirm the judgment.

The plea agreement at issue provided that the government would move for a downward departure at sentencing in ex-

change for "full, complete, truthful, and substantial cooperation." Sentencing Guideline U.S.S.G. § 5K1.1 provides, "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." In determining whether the downward departure is appropriate, courts must give substantial weight to the government's evaluation of the extent of the defendant's assistance. U.S.S.G. § 5K1.1, comment. (n.3).

As previously mentioned, the government declined to move for a downward departure. In response, defendant filed a motion asking the district court to compel it to do so. The district court denied the motion in open court.

According to an affidavit filed by defendant, he believes that the failure of the government to move for a downward departure was due in part by a desire to retaliate against him for filing a pro se lawsuit in 1994 against the Dayton, Ohio police department. According to a memorandum in support of his motion to compel, that lawsuit sought redress for the disclosure by Detective Carol Huber of his status as an informant. In his view, his First Amendment right to petition the government for redress of grievances—by filing suit against the Dayton police—has been violated by the act of retaliation on the part of the United States Attorney's office, to wit, its failure to move for a downward departure.

In a memorandum in response to defendant's motion, the government notes that the 1994 suit was dismissed for failure to state a claim and that Detective Huber had submitted an affidavit that she did not even hear of the case until 2001. The memorandum then explains the reasons for not filing a § 5K1.1 motion:

During attempted debriefings defendant was consistently evasive and attempted to minimize his own involvement in the underlying fraud scheme. Almost immediately after entering his plea defendant threatened to seek withdrawal of the plea and even presented a letter from a fellow inmate who claimed to be the real perpetrator of the conspiracy charged in the instant offense. Boykin also had co-defendant Katrina Wright make a tape recording in which she and Boykin attempted to shift blame for his part in this conspiracy to co-defendant Rhoshanda Hayes. Finally, during the January, 2001 proffer attempt, defendant again failed to be truthful with investigators. SA Lakes and Detective Huber ended the meeting and began to walk out. Only after [defense counsel] intervened did the officers return and Mr. Boykin reluctantly admitted facts to which he had already offered contra information.

... There is no dispute that defendant Boykin provided SA Steve Darragh of the FBI with the name of Maurice Lauderdale, in connection with an investigation of a local bank robbery. This information proved accurate and Mr. Lauderdale ultimately pled to the federal charge.... However, this particular piece of information does not amount to compliance with the conditions prerequisite to a 5K filing.... Mr. Boykin's repeated failure to truthfully proffer has made him unreliable as a witness in other related matters.

Memorandum in Opposition, Apr. 2, 2001 at 5–6 (footnote omitted).

The Supreme Court has already outlined the extent to which the district court can inquire into the government's decision not to file a substantial assistance motion:

[W]e hold that federal district courts have authority to review a prosecutor's

refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion.

It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive. Indeed. Wade concedes that a defendant has no right to discovery or an evidentiary hearing unless he makes a "substantial threshold showing."

*Wade v. United States,* 504 U.S. 181, 185–86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (citation omitted); *accord United States v. Bagnoli,* 7 F.3d 90, 92 (6th Cir.1993).

In our view, defendant has not made the requisite threshold showing that the government acted with unconstitutional animus. There is no allegation that his race or religion played a part in the government's decision. Instead, defendant relies solely upon his First Amendment retaliation claim. However, any relationship between defendant's pro se suit against the Dayton Police Department and the government's decision not to file a motion for a downward departure is highly speculative at best and falls short of the "substantial threshold showing" required to entitle defendant to a hearing, let alone to the relief that he seeks.

The judgment is **affirmed.**